UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**COCO FUEGO LLC**, and
**JAFAR ALSHAHEEN**,

          Plaintiffs,

v

                                  Case No.
                                  Judge:

**AL MUNEEB 1 LLC**, and
**SALMAN ZAID**

          Defendants.

---

HAMMOUD, DAKHLALLAH &
ASSOCIATES, PLLC
Kassem M. Dakhlallah (P70842)
Kassem H. Amine (P86440)
Attorneys for Plaintiffs
330 Town Center Drive, Suite 100
Dearborn, MI 48126
(313) 433-3639
kd@hdalawgroup.com
ka@hdalawgroup.com

---

## COMPLAINT AND JURY DEMAND

     **NOW COME** Plaintiffs **COCO FUEGO LLC** and **JAFAR ALSHAHEEN**,

by and through their attorneys HAMMOUD, DAKHLALLAH & ASSOCIATES,

and for their Complaint against Defendants, **AL MUNEEB 1 LLC** and **SALMAN**

**ZAID**, hereby state as follows:

1

## PARTIES & JURISDICTION

1. Plaintiff COCO FUEGO, LLC ("**Coco Fuego**") is a limited liability company organized in the state of Michigan.

2. Plaintiff JAFAR ALSHAHEEN ("**Alshaheen**") is an individual domiciled in the State of Michigan and is the principal of Coco Fuego.

3. Defendant AL MUNEEB 1 LLC ("**Al Muneeb**") is a limited liability company organized in the state of Michigan. Al Muneeb's principal office is located in the state of Michigan at 9965 Northlawn St, Detroit, MI 48204.

4. Upon information and belief, Defendant SALMAN ZAID ("**Zaid**") is the owner and operator of Defendant Al Muneeb. Upon information and belief, Salman Zaid is domiciled in the state of Michigan.

5. This Court has personal jurisdiction over Defendant Al Muneeb pursuant to the Federal Rule of Civil Procedure 4(k)(1)(A) and MCL 600.721 because Al Muneeb was formed in the State of Michigan and carries on a continuous and systematic part of its general business within the State of Michigan.

6. This Court has personal jurisdiction over Defendant Zaid pursuant to the Federal Rule of Civil Procedure 4(k)(1)(A) and MCL 600.701 as Zaid is domiciled in the state of Michigan.

7. This Court has subject-matter jurisdiction over this case pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a) because this case arises under

the trademark laws of the United States and other federal laws.

8. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiffs' state law claims share the same operative facts with Plaintiffs' federal law claims, and the parties are identical. Resolving Plaintiffs' federal and state claims in a single action serves the interest of judicial economy, convenience, consistency, and fairness to the parties.

9. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claims in this case occurred in this judicial district, the property that is the subject of the action is situated in this judicial district, and upon information and belief, both Defendants reside in this judicial district.

## FACTUAL ALLEGATIONS

**A. Coco Fuego & The Trademark**

10. Plaintiffs restate and incorporate by reference the allegations in the preceding paragraphs as though fully set forth here.

11. At all times relevant, Plaintiff Alshaheen is and was the owner of all rights, title, and interests in and to the trademark "**COCO FUEGO®**", serial number: 88417458, registered on December 22, 2020 (the "**Trademark**"). **Ex. A –**

**Trademark Registration**.

12. Plaintiff Alshaheen is the sole owner and principal operator of Plaintiff Coco Fuego.

13. Plaintiff Coco Fuego produces and supplies various hookah-related items, including but not limited to, hookah charcoal under the Trademark.

14. Coco Fuego supplies products under the Trademark, including its charcoal, to various retailers in the State of Michigan and nationwide.

15. The Trademark is well established and widely recognized by consumers as identifying Plaintiffs as the source of the goods.

16. Through substantial time, effort, expense, advertising, promotion, and continuous use, Plaintiffs have developed significant goodwill and a strong reputation in connection with the Trademark.

17. Plaintiffs' trademarked charcoal is known in the marketplace for its high quality, consistency, and reliability.

18. Because of that reputation, retailers and consumers associate the Trademark with genuine, premium-quality charcoal originating from Plaintiffs.

B. **Defendants Intentionally and Knowingly Purchased, Concealed, and Distributed Counterfeit Charcoal Bearing the Trademark**

19. Defendant Al Muneeb operates a wholesale warehouse that sells drinks, food, snacks, household items, hookah-related products, and other consumer goods to retailers in Michigan.

4

20. Upon information and belief, Al Muneeb also sells to out-of-state retailers.

21. Upon information and belief, Defendant Zaid owns, operates, manages, and/or controls Al Muneeb's wholesale business, including its purchasing, storage, invoicing, and sale of hookah-related products.

22. Defendants knew of Plaintiffs, the Trademark, and that charcoal bearing the Trademark was associated with Plaintiffs' high-quality charcoal products.

23. Despite that knowledge, Defendants purchased charcoal from a third party that did not originate from Plaintiffs, was not authorized by Plaintiffs, and was not genuine Coco Fuego charcoal.

24. The counterfeit charcoal bore the Trademark and was packaged in a manner designed to appear identical or substantially similar to Plaintiffs' genuine Coco Fuego charcoal packaging.

25. The counterfeit charcoal is substantially lower in quality than Plaintiffs' genuine Coco Fuego charcoal.

26. Defendants purchased the counterfeit charcoal at prices substantially below the prices at which Plaintiffs sell genuine Coco Fuego charcoal.

27. After purchasing the counterfeit Coco Fuego charcoal, Defendants then resold and distributed the counterfeit charcoal to retailers in Michigan as though it were genuine Coco Fuego charcoal.

28. Upon information and belief, Defendants also resold and distributed the

5

counterfeit charcoal to out-of-state retailers as though it were genuine Coco Fuego charcoal.

29. By doing so, Defendants knowingly and intentionally passed off inferior counterfeit charcoal as genuine Coco Fuego charcoal and traded on the reputation, goodwill, and consumer recognition associated with the Trademark.

30. Defendants' sale of inferior counterfeit charcoal caused retailers and consumers to associate poor-quality charcoal with Plaintiffs' charcoal, thereby damaging the Trademark's and Plaintiffs' reputation, goodwill, and standing in the marketplace.

31. Defendants attempted to conceal their sale and distribution of counterfeit Coco Fuego charcoal by avoiding Al Muneeb's ordinary invoicing and inventory-record system.

32. Specifically, rather than inputting the counterfeit Coco Fuego charcoal into Al Muneeb's system so that it would appear as a printed line item on an invoice, Defendants handwrote references to "Coco Charcoal" on invoices.

33. Defendants used handwritten invoice entries to avoid creating ordinary business records showing that Defendants were purchasing, storing, selling, and distributing counterfeit charcoal bearing the Trademark.

34. In some cases, Defendants would input the counterfeit charcoal on their invoices without identifying the brand of the charcoal and would only label the line item corresponding to the counterfeit Coco Fuego charcoal as "charcoal" in a further

6

effort to conceal their purchase, storage, sale, and distribution of counterfeit charcoal bearing the Trademark.

35. On or about May 12, 2026, and after learning of Defendants' ongoing purchasing and sales of the counterfeit Coco Fuego Charcoal, Plaintiff Alshaheen went to Al Muneeb's warehouse in Detroit and purchased multiple items, including a case of the counterfeit Coco Fuego charcoal. **Ex. B – Invoice From Al Muneeb**.

36. The May 12, 2026 invoice did not identify the counterfeit Coco Fuego charcoal through Al Muneeb's ordinary system-generated invoice entries.

37. Instead, Al Muneeb's agent handwrote "Coco Fuego" in Arabic on the invoice while completing the purchase, which Plaintiff Alshaheen personally observed.

38. The following image is a box of the counterfeit Coco Fuego charcoal that Defendants sold to Plaintiff Alshaheen on May 12, 2026:



39. The following image is a box of authentic Coco Fuego charcoal sold by Plaintiffs:



40. The packaging of the counterfeit charcoal is nearly identical to the packaging of the authentic Coco Fuego charcoal. The only apparent difference is that the authentic packaging bears a different security seal affixed to the top of the box.

41. Plaintiffs have identified multiple retailers in Michigan who have informed Plaintiffs that they purchased counterfeit Coco Fuego charcoal from Defendants.

42. The counterfeit Coco Fuego charcoal bearing the Trademark that those retailers purchased from Defendants did not originate from Plaintiffs and was not authorized by Plaintiffs.

43. Defendants used the same concealment method in connection with those sales.

44. Specifically, rather than entering the counterfeit Coco Fuego charcoal into

8

Defendants' ordinary invoicing and inventory system, Defendants identified the counterfeit charcoal through handwritten notations on invoices or by omitting the brand of the charcoal on invoices.

45. Defendants' invoice entries show that Defendants' conduct was not accidental, isolated, or inadvertent.

46. Instead, Defendants engaged in a deliberate practice of selling counterfeit Coco Fuego charcoal while avoiding the creation of ordinary business records reflecting those sales.

47. Defendants used this concealment practice to hide the scope of their purchase, storage, sale, and distribution of counterfeit charcoal bearing the Trademark.

48. Defendants' sales to retailers damaged Plaintiffs' reputation and goodwill by placing inferior counterfeit charcoal into the marketplace under the Trademark.

49. Defendants' conduct caused retailers and consumers to believe that the inferior counterfeit charcoal originated from Plaintiffs, thereby harming the reputation for quality associated with Plaintiffs' genuine Coco Fuego charcoal.

## COUNT I – TRADEMARK INFRINGEMENT 15 U.S.C. § 1114

50. Plaintiffs hereby re-allege and incorporate all previous paragraphs of this Complaint as if fully restated herein.

51. Defendants have, without Plaintiffs' consent, used and continue to use in commerce the Trademark or counterfeits, copies, reproductions, or colorable

9

imitations of it in connection with the sale, offering for sale, distribution, and advertising of Defendants' goods and services.

52. Defendants' acts constitute infringement of Plaintiffs' exclusive rights in the Trademark in violation of 15 U.S.C. § 1114.

53. Defendants' acts of infringement have been and continue to be deliberate, willful, and wanton, making this an exceptional case under 15 U.S.C. § 1117.

54. Defendants' use of the Trademark or counterfeits, copies, reproductions, or colorable imitations of it has been and continues to be done with the intent to cause confusion and mistake and to deceive consumers concerning the source or sponsorship of Defendants' goods and services.

55. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm to their valuable mark. Unless Defendants are restrained from further infringement of the Trademark, Plaintiffs will continue to be irreparably harmed.

56. Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm they will suffer if Defendants' conduct is allowed to continue.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment against Defendants for trademark infringement and award Plaintiffs damages in an amount greater than $75,000, as well as all remedies available to them

under 15 U.S.C. §§ 1051 *et seq*. including but not limited to, § 1114, § 1117, § 1121, plus three times Defendants' profits from their unauthorized use of the Trademark, plus all costs and attorney fees so wrongfully incurred in having to bring this lawsuit, and any other relief this Court deems just and proper.

## COUNT II – FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION 15 U.S.C. § 1125(a)

57. Plaintiffs hereby re-allege and incorporate all previous paragraphs of this Complaint as if fully restated herein.

58. Defendants have used the Trademark and Coco Fuego's name, logo, symbol, and design in commerce in a manner that is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' commercial activities by Plaintiffs, in violation of 15 U.S.C. § 1125(a)(1).

59. Specifically, Defendants have:

    a. Used the Trademark in commerce in connection with the sale, offering for sale, distribution, or advertising of counterfeit Coco Fuego charcoal;

    b. Created a likelihood of confusion among consumers as to whether Defendants' counterfeit goods are affiliated with, connected to, sponsored by, or approved by Plaintiffs; and

    c. Falsely designated the origin of the counterfeit Coco Fuego charcoal in a manner that misleads consumers into believing that such counterfeit

Coco Fuego charcoal originates from or is associated with Plaintiffs.

60. Alternatively, or additionally, Defendants have engaged in false or misleading advertising or promotion by misrepresenting the nature, characteristics, qualities, or geographic origin of their counterfeit Coco Fuego charcoal, in violation of U.S.C. § 1125(a)(1).

61. Defendants' use of the false designation of origin and false or misleading representations were made in interstate commerce and constituted commercial advertising or promotion within the meaning of 15 U.S.C. § 1125(a).

62. Defendants' actions were intentional, willful, and undertaken with knowledge of Plaintiffs' rights and with the intent to trade upon Plaintiffs' reputation or alternatively undertaken with reckless disregard for Plaintiffs' rights.

63. Plaintiffs' reputation is and will continue to be damaged by Defendants' false designation of origin and unfair competition unless Defendants are enjoined by this Court.

64. As a direct and proximate result of Defendants' violations of 15 U.S.C. § 1125(a), Plaintiffs have suffered and will continue to suffer substantial damages, including but not limited to:

    a. Loss of sales and profits;

    b. Loss of business opportunities;

    c. Injury to Plaintiffs' reputation and goodwill;

    d. Consumer confusion and dilution of Plaintiffs' brand;

    e. Costs incurred in correcting the false designations and misrepresentations in the marketplace.

65. Defendants' conduct has caused and will continue to cause irreparable harm to Plaintiffs for which there is no adequate remedy at law, entitling Plaintiffs to injunctive relief.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment against Defendants for false designation of origin and unfair competition and award Plaintiffs damages in an amount greater than $75,000, as well as all remedies available to them under 15 U.S.C. §§ 1051 *et seq*. including but not limited to, § 1114, § 1117, § 1121, plus three times Defendants' profits from their unauthorized use of the Trademark, plus all costs and attorney fees so wrongfully incurred in having to bring this lawsuit, and any other relief this Court deems just and proper.

## COUNT III – COMMON LAW TRADEMARK INFRINGEMENT & UNFAIR COMPETITION UNDER MICHIGAN LAW

66. Plaintiffs hereby re-allege and incorporate all previous paragraphs of this Complaint as if fully restated herein.

67. Plaintiffs own valid and enforceable rights in the Trademark.

68. Through Plaintiffs' continuous use, sale, promotion, and distribution of charcoal products bearing the Trademark, the Trademark has become associated in the

marketplace with Plaintiffs and Plaintiffs' high-quality charcoal products.

69. Plaintiffs have developed substantial goodwill, reputation, and consumer recognition in connection with the Trademark.

70. Defendants had knowledge of Plaintiffs, Plaintiffs' charcoal products, and Plaintiffs' rights in the Trademark.

71. Without Plaintiffs' authorization or consent, Defendants purchased, stored, sold, offered for sale, and distributed counterfeit charcoal bearing the Trademark and/or colorable imitations of it.

72. The counterfeit charcoal did not originate from Plaintiffs and was not authorized, approved, sponsored, or supplied by Plaintiffs.

73. Defendants' use of the Trademark on counterfeit charcoal was likely to cause confusion, mistake, or deception among retailers and consumers as to the source, origin, sponsorship, approval, or affiliation of the counterfeit charcoal.

74. Defendants passed off inferior counterfeit charcoal as genuine Coco Fuego charcoal.

75. Defendants thereby misappropriated Plaintiffs' business reputation and goodwill and unfairly traded on the consumer recognition associated with the Trademark.

76. Defendants' conduct deceived, or was likely to deceive, retailers and consumers into believing that the counterfeit charcoal originated from Plaintiffs or was otherwise affiliated with, sponsored by, or approved by Plaintiffs.

77. Defendants' conduct constitutes common law trademark infringement under Michigan law.

78. Defendants' conduct also constitutes unfair competition under Michigan law because Defendants used the Trademark and Plaintiffs' reputation and goodwill to sell counterfeit goods in competition with Plaintiffs and to divert sales from Plaintiffs.

79. Defendants' conduct was willful, intentional, and undertaken with knowledge of Plaintiffs' rights.

80. Defendants attempted to conceal their conduct by identifying counterfeit Coco Fuego charcoal through handwritten Arabic notations on invoices or by omitting the brand of the charcoal on invoices rather than entering those sales into Defendants' ordinary system-generated invoicing and inventory records.

81. Defendants' concealment efforts further demonstrate that Defendants knew their sale and distribution of counterfeit Coco Fuego charcoal was unauthorized and wrongful.

82. As a direct and proximate result of Defendants' common law trademark infringement and unfair competition, Plaintiffs have suffered damages, including lost sales, lost profits, damage to reputation, damage to goodwill, consumer confusion, and costs incurred to investigate and correct confusion in the marketplace.

15

83. Defendants' conduct has caused and will continue to cause irreparable harm to Plaintiffs unless Defendants are enjoined.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment against Defendants for damages in an amount greater than $75,000, plus all costs and attorney fees so wrongfully incurred in having to bring this lawsuit, and any other relief this Court deems just and proper.

## COUNT IV – UNJUST ENRICHMENT

84. Plaintiffs hereby re-allege and incorporate all previous paragraphs of this Complaint as if fully restated herein.

85. As outlined in more detail above, Defendants used and misappropriated the Trademark and Plaintiffs' goodwill, reputation, and recognition without Plaintiffs' consent or authorization and without conferring a benefit to Plaintiffs and while enriching themselves.

86. Therefore, Plaintiffs have bestowed a benefit upon Defendants.

87. Defendants have wrongfully obtained the benefit of the Trademark, and Plaintiffs' goodwill, reputation, and recognition.

88. An inequity has thus resulted as Defendants wrongfully retained the benefit of the Trademark and Plaintiffs' goodwill, reputation, and recognition to Plaintiffs' detriment.

89. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages and Defendants have been unjustly enriched.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment against Defendants for damages in an amount greater than $75,000, plus all costs and attorney fees so wrongfully incurred in having to bring this lawsuit, and any other relief this Court deems just and proper.

## COUNT V – DECLARATORY RELIEF

90. Plaintiffs hereby re-allege and incorporate all previous paragraphs of this Complaint as if fully restated herein. Pursuant to 28 U.S.C. §§ 2201–2202 and Fed. R. Civ. P. 57, an actual, immediate, and justiciable controversy exists between Plaintiffs and Defendants concerning the parties' respective rights and obligations relating to the Trademark, Defendants' use of the Trademark, Defendants' sale and distribution of counterfeit Coco Fuego charcoal, Defendants' false designation of origin and unfair competition, Defendants' common law trademark infringement and unfair competition under Michigan law, and Defendants' unjust enrichment.

91. Plaintiffs own valid and enforceable rights in the Trademark.

92. Defendants purchased, stored, sold, offered for sale, and distributed counterfeit charcoal bearing the Trademark and/or colorable imitations of it without

Plaintiffs' authorization or consent.

93. Defendants have no ownership interest, license, authorization, permission, or other legal right to use the Trademark in connection with the purchase, sale, offering for sale, storage, distribution, advertising, or promotion of charcoal or any related goods.

94. Defendants' unauthorized use of the Trademark has caused, and is likely to continue causing, confusion, mistake, or deception as to the source, origin, sponsorship, approval, affiliation, or association of Defendants' counterfeit charcoal.

95. Defendants' use of the Trademark and/or colorable imitations of it in connection with counterfeit charcoal falsely designated the origin of that charcoal and misled retailers and consumers into believing that the counterfeit charcoal originated from, was affiliated with, was sponsored by, or was approved by Plaintiffs.

96. Defendants' use of the Trademark and/or colorable imitations of it also misrepresented the nature, characteristics, qualities, and origin of the counterfeit charcoal because the counterfeit charcoal did not originate from Plaintiffs and was substantially lower in quality than Plaintiffs' genuine Coco Fuego charcoal.

97. Defendants' conduct was likely to deceive, and did deceive, retailers and consumers into believing that inferior counterfeit charcoal was genuine Coco Fuego charcoal.

98. Defendants' conduct has injured Plaintiffs' reputation, goodwill, business relationships, and consumer recognition associated with the Trademark.

99. Defendants' conduct constitutes false designation of origin and unfair competition under 15 U.S.C. § 1125(a).

100. Defendants' conduct also constitutes infringement of Plaintiffs' exclusive rights in the Trademark in violation of 15 U.S.C. § 1114.

101. Defendants' conduct was also deliberate, willful, and wanton, making this an exceptional case under 15 U.S.C. § 1117.

102. Defendants' conduct also constitutes common law trademark infringement and unfair competition under Michigan law because Defendants used the Trademark, reputation, and goodwill to sell counterfeit goods in competition with Plaintiffs, pass off inferior counterfeit charcoal as genuine Coco Fuego charcoal, and divert sales from Plaintiffs.

103. Defendants were unjustly enriched by their unauthorized use of the Trademark and Plaintiffs' goodwill, reputation, and consumer recognition.

104. Defendants wrongfully obtained and retained profits, revenues, and other benefits from the sale and distribution of counterfeit Coco Fuego charcoal.

105. It would be inequitable for Defendants to retain any profits, revenues, or benefits obtained from their unauthorized use of the Trademark and Plaintiffs' goodwill, reputation, and consumer recognition.

106. Defendants' conduct was willful, intentional, and undertaken with knowledge of Plaintiffs' rights in the Trademark.

107. Defendants' concealment efforts, including the use of handwritten invoice notations and/or invoices omitting the Trademark, further demonstrate that Defendants knew their purchase, storage, sale, and distribution of counterfeit Coco Fuego charcoal was unauthorized and wrongful.

108. Unless Defendants are enjoined, Defendants' conduct threatens continuing and irreparable harm to Plaintiffs, the Trademark, and the goodwill associated with the Trademark.

109. Accordingly, Plaintiffs request that this Court enter a declaratory judgment declaring that:

   a. Plaintiffs own valid and enforceable rights in the Trademark;

   b. Defendants have no ownership interest, license, authorization, permission, or other legal right to use the Trademark;

   c. Defendants' purchase, storage, sale, offering for sale, distribution, advertising, or promotion of counterfeit charcoal bearing the Trademark and/or colorable imitations of it was unauthorized and unlawful;

   d. Defendants' use of the Trademark and/or colorable imitations of it is likely to cause confusion, mistake, or deception as to the source, origin, sponsorship, approval, affiliation, or association of Defendants' counterfeit charcoal;

   e. Defendants' conduct constitutes trademark infringement under 15 U.S.C. § 1114;

20

f.  Defendants' conduct constitutes false designation of origin and unfair competition under 15 U.S.C. § 1125(a);

g.  Defendants' conduct constitutes common law trademark infringement and unfair competition under Michigan law;

h.  Defendants were unjustly enriched by their unauthorized use of the Trademark and Plaintiffs' goodwill, reputation, and consumer recognition;

i.  Defendants must disgorge all profits, revenues, and benefits obtained from their unauthorized use of the Trademark and their sale and distribution of counterfeit charcoal bearing the Trademark;

j.  Defendants' conduct was willful, intentional, and undertaken with knowledge of Plaintiffs' rights;

k.  Plaintiffs are entitled to injunctive relief prohibiting Defendants from further using the Trademark, any counterfeit of the Trademark, or any reproduction, copy, or colorable imitation of the Trademark; and

l.  Plaintiffs are entitled to further necessary and proper relief under 28 U.S.C. § 2202.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants, jointly and severally, and grant the following relief:

a.  Enter judgment in favor of Plaintiffs and against Defendants on all counts of the Complaint;

b.  Declare that Plaintiffs own valid and enforceable rights in the Trademark;

c.  Declare that Defendants have no ownership interest, license, authorization,

21

permission, or other legal right to use the Trademark;

d. Declare that Defendants' purchase, storage, sale, offering for sale, distribution, advertising, or promotion of counterfeit charcoal bearing the Trademark and/or colorable imitations of it was unauthorized and unlawful;

e. Declare that Defendants' conduct constitutes trademark infringement under 15 U.S.C. § 1114;

f. Declare that Defendants' conduct constitutes false designation of origin and unfair competition under 15 U.S.C. § 1125(a);

g. Declare that Defendants' conduct constitutes common law trademark infringement and unfair competition under Michigan law;

h. Declare that Defendants were unjustly enriched by their unauthorized use of the Trademark and Plaintiffs' goodwill, reputation, and consumer recognition;

i. Temporarily, preliminarily, and permanently enjoin Defendants, their officers, agents, servants, employees, attorneys, representatives, successors, assigns, and all persons acting in active concert or participation with them from using the Trademark, any counterfeit of the Trademark, or any reproduction, copy, or colorable imitation of the Trademark in commerce;

j. Temporarily, preliminarily, and permanently enjoin Defendants, their officers, agents, servants, employees, attorneys, representatives, successors, assigns, and all persons acting in active concert or participation with them

from purchasing, selling, offering for sale, distributing, storing, advertising, promoting, transporting, or otherwise dealing in any counterfeit charcoal bearing the Trademark or any other counterfeit goods bearing the Trademark or any reproduction, copy, or colorable imitation of it;

k. Temporarily, preliminarily, and permanently enjoin Defendants from representing, directly or indirectly, that any counterfeit charcoal or other goods sold, offered for sale, distributed, stored, advertised, or promoted by Defendants originate from, are affiliated with, are sponsored by, or are approved by Plaintiffs;

l. Order Defendants to immediately cease all use of the Trademark, any counterfeit of the Trademark, and any reproduction, copy, or colorable imitation of the Trademark;

m. Order Defendants to immediately identify, segregate, preserve, and turn over all counterfeit charcoal bearing the Trademark and all packaging, labels, signs, invoices, advertisements, promotional materials, documents, records, and things bearing the Trademark, any counterfeit of the Trademark, or any reproduction, copy, or colorable imitation of it;

n. Order the impoundment, delivery, and destruction of all counterfeit charcoal bearing the Trademark, packaging, labels, signs, advertisements, promotional materials, and other infringing materials pursuant to 15 U.S.C. § 1118;

23

o. Order Defendants to provide a full accounting of all purchases, sales, revenues, profits, inventory, customers, retailers, suppliers, invoices, handwritten invoice notations, warehouse records, inventory records, communications, and other documents relating to counterfeit charcoal bearing the Trademark or any goods bearing the Trademark;

p. Order Defendants to identify all persons and entities from whom Defendants purchased counterfeit charcoal bearing the Trademark and all persons and entities to whom Defendants sold, distributed, offered, transferred, or delivered counterfeit charcoal bearing the Trademark;

q. Award Plaintiffs Defendants' profits, Plaintiffs' actual damages, and the costs of this action pursuant to 15 U.S.C. § 1117(a);

r. Award Plaintiffs treble damages or treble profits, whichever is greater, together with reasonable attorney fees, pursuant to 15 U.S.C. § 1117(b), based on Defendants' willful and knowing use of counterfeit marks in connection with the sale, offering for sale, and distribution of counterfeit goods;

s. Alternatively, at Plaintiffs' election, award Plaintiffs statutory damages for Defendants' use of counterfeit marks pursuant to 15 U.S.C. § 1117(c), including enhanced statutory damages for willful counterfeiting;

t. Find that this is an exceptional case and award Plaintiffs their reasonable attorney fees pursuant to 15 U.S.C. § 1117(a);

u. Award Plaintiffs restitution, disgorgement, and all other equitable relief necessary to prevent Defendants' unjust enrichment;

v. Award Plaintiffs damages for Defendants' common law trademark infringement and unfair competition under Michigan law;

w. Award Plaintiffs exemplary damages to the extent permitted under Michigan law;

x. Award Plaintiffs pre-judgment and post-judgment interest to the fullest extent permitted by law;

y. Award Plaintiffs their taxable costs and expenses; and

z. Award Plaintiffs any other relief this Court deems just and proper.

Respectfully Submitted,

/s/ Kassem H. Amine
Kassem H. Amine (P86440)
HAMMOUD, DAKHLALLAH
& ASSOCIATES PLLC
330 Town Center Drive, Suite 100
Dearborn, MI 48126
313-551-3038
ka@hdalawgroup.com
Dated: July 14, 2026                    *Attorney for Plaintiffs*

25

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**COCO FUEGO LLC**, and
**JAFAR ALSHAHEEN**,

          Plaintiffs,

v                                 Case No.
                                 Judge:

**AL MUNEEB 1 LLC**, and
**SALMAN ZAID**

          Defendants.

---

HAMMOUD, DAKHLALLAH &
ASSOCIATES, PLLC
Kassem M. Dakhlallah (P70842)
Kassem H. Amine (P86440)
Attorneys for Plaintiffs
330 Town Center Drive, Suite 100
Dearborn, MI 48126
(313) 433-3639
kd@hdalawgroup.com
ka@hdalawgroup.com

---

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all triable issues, pursuant to Fed.

R. Civ. P. 38(b) and Fed. R. Civ. P. 38(c).

                          Respectfully Submitted,

                          /s/ Kassem H. Amine
                          Kassem H. Amine (P86440)
                          HAMMOUD, DAKHLALLAH

26

& ASSOCIATES PLLC
330 Town Center Drive, Suite 100
Dearborn, MI 48126
313-551-3038
ka@hdalawgroup.com

Dated: July 14, 2026                                    *Attorney for Plaintiffs*